Paul WOOD, Plaintiff,

v.

COMMONWEALTH EDISON COMPANY and Aldridge Electric, Inc., Defendants.

No. 71 C 364.

United States District Court, N. D. Illinois, E. D.

June 15, 1972.

Robert S. Fritzshall, Chicago, Ill., for plaintiff.

C. Roy Peterson, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

TONE, District Judge.

Plaintiff, an employee of Aldridge Electric, Inc., was injured when, while stringing wire, he fell from a wooden utility pole owned by Commonwealth Edison Company. In Count I of his complaint plaintiff alleges liability of Commonwealth Edison Company, in part based upon violation of the Illinois Structural Work Act (Ill.Rev.Stats.1971, Ch. 48, §§ 60, 64 and 69). That defendant has moved for summary judgment on the ground that the Structural Work Act is not applicable.

The first issue for consideration is whether a wooden utility pole falls within the statutory requirement of Section 60 of a scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance. I hold that the pole does meet this statutory requirement. In Spiezio v. Commonwealth Edison Co., 91 Ill. App.2d 392, 235 N.E.2d 323 (1st Dist. 1968), the plaintiff, an iron worker employed by Bethlehem Steel Corporation in the construction of a power plant for Commonwealth Edison, fell from a steel column which was a permanent part of the structure. The plaintiff had climbed the column to a point where he could connect a crossbeam to the column. The Court held that the column fell within the statutory definition of the Act:

"In our opinion, the rule to be applied here should be that if the apparatus was intended to be and was put to temporary use to provide footing or support above the ground or floor for workmen at the time of the occurrence, it was a scaffold and within the purview of the Scaffold Act, regardless of whether the apparatus or device was, or was intended to be, a permanent part of the structure being worked upon." 235 N.E.2d at 329.

Louis v. Barenfanger, 39 Ill.2d 445, 236 N.E.2d 724 (1968) has implicitly overruled such earlier cases as Parizon v. Granite City Steel Co., 71 Ill.App.2d 53, 218 N.E.2d 27 (1966) and Bohannon v. Joseph T. Ryerson & Son, Inc., 72 Ill. App.2d 397, 219 N.E.2d 627 (1966), which held a permanent part of a structure not to be within the definition of the Act.

The next issue for consideration is whether the further statutory requirement of Section 60 is met—that the pole have been "erected or constructed . . . for the use in the *erection, repairing, alteration* . . . of any house, bridge, viaduct, *or other structure.*" I conclude that this statutory definition is also met.

*Spiezio* is again controlling. Certainly the pole itself together with any of its crossbeams and any wire strung therefrom is a structure. The pole, part of the structure, was serving as a temporary scaffolding or support upon which the plaintiff was to stand while altering the structure itself—stringing additional wire from it. Thus, the pole was erected, at least partially, for use in *altering the structure,* i. e., the pole, crossbeam, wire combination.

Defendant Commonwealth Edison Company further argues that summary judgment should be granted as to

that portion of the claim based upon Section 64 of the Act, which requires that a safety scaffolding be present underneath the worker, but only if the work is being performed at a height of 32 feet or more. Commonwealth Edison relies upon plaintiff's deposition testimony that the pole he was working upon was approximately 55 feet high and that he was working 20–25 feet from the top, and upon a statement attached to the deposition wherein plaintiff states that he was working approximately 30 feet up on the pole. These estimates of the plaintiff, while admissible in evidence against him on the issue of the height of the work, are not conclusive and do not preclude him from offering additional evidence on that issue at the trial. Summary judgment cannot be granted on the basis of these statements by plaintiff.

The final basis asserted by defendant Commonwealth Edison Company for summary judgment is that Commonwealth Edison was not "in charge" of the work and thus the statutory requirement of Section 69 was not met. That section places liability for violation of the Act upon "any owner, contractor, subcontractor, foreman or other person *having charge of* the erection, construction, repairing, alteration, . . . of any building, bridge, viaduct or other structure within the provisions of this Act . . . ." (Emphasis added.)

 Violations of the Act can only be committed by persons directly connected with the operation, not by virtue of mere ownership of the premises. Gannon v. Chicago, Milwaukee, St. Paul, and Pacific Railway Company, 22 Ill.2d 305, 175 N.E.2d 785 (1961). Whether an owner is "in charge" of the work is a jury question. Larson v. Commonwealth Edison Co., 33 Ill.2d 316, 211 N.E.2d 247 (1965). Actual control and supervision over the specific work is not the legal equivalent of the statutory language "having charge of." *Ibid. Larson* also held that the contractual retention of the right to control the work, whether exercised or not, can be sufficient to

subject a defendant to liability under the Act. See also Kobus v. Formfit Co., 35 Ill.2d 533, 221 N.E.2d 633 (1966), where the Illinois Supreme Court reversed a grant of summary judgment to defendant where plaintiff contended that the owner of the building acted as its own general contractor and engaged an architect to select the various contractors and subcontractors and where the owner received progress reports from the architect and reserved the right to make alterations or corrections.

In the present case the defendant specifically states that he relies solely upon the plaintiff's deposition as a basis for summary judgment. There is no showing therein that defendant-owner did not retain the right to control.

For the aforementioned reasons defendant Commonwealth Edison Company's motion for summary judgment is hereby denied.