DEAN E. SMITH, Plaintiff-Appellant, *v.* GEORGIA PACIFIC CORPORATION *et al.*, Defendants-Appellees.—(CAPITOL SCALE CO. *et al.*, Defendants-Appellees and Third-Party Plaintiffs, *v.* RAY SWATA, d/b/a Spectrum Painting & Decorating, Third-Party Defendant.)

Third District No. 79-864

Opinion filed July 25, 1980.

James Kellstedt, of Peoria Heights, for appellant.

John R. Hoffert, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee Waste Management, Inc.

James C. Kearns, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Capitol Scale Company.

Kavanaugh, Scully, Sudow, White & Frederick, of Peoria, for appellee Charles Roth.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Dean E. Smith is the plaintiff in a suit brought under the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*) in the Circuit Court of Peoria County. The suit was tried before a jury which became deadlocked in its deliberations. Some months later the trial court, having reserved ruling on defendants' motions for directed verdict at the close of the evidence, decided those motions against the plaintiff. Plaintiff appeals the trial court's belated order directing the verdict.

One of the defendants herein, Waste Management, Inc., had entered into a contract to purchase a warehouse building in East Peoria, Illinois, from Georgia Pacific Corporation. In preparation for occupying the structure, Waste Management contracted with another defendant, Paul Smith and his company, Capitol Scale Co., to improve and refurbish the premises. In turn Paul Smith hired Ray Swata, who did business as

Spectrum Painting & Decorating, as a subcontractor. Swata, who was made a third-party defendant to these proceedings by Waste Management, was obligated by the subcontract to paint the exterior of the recently acquired building. The plaintiff was employed as a painter by Swata.

On October 23, 1974, the plaintiff was spray-painting the warehouse while standing approximately 20 feet off the ground on an aluminum extension ladder. The swivel bases at the bottom of the ladder rested on railroad ties which formed part of a rail siding adjacent to the structure. Sometime on the morning of the 23d, the plaintiff intentionally "jumped" his ladder. "Jumping" is a procedure employed by a painter to move the ladder a matter of inches so that the area covered by the rungs of the ladder can be painted. This act of "jumping" caused the ladder and its occupant to fall, whereby the plaintiff suffered numerous and severe injuries.

The plaintiff brought suit to be compensated for his injuries under the provisions of the Structural Work Act (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*). Named as defendants were Waste Management, Paul Smith and Capitol Scale. After a 23-day trial and 11 hours of deliberation, a 12-person jury was unable to reach a verdict on the evidence. Consequently, a mistrial was declared and the jury discharged. Several months later, after considering the evidence and the law, the trial judge ruled on motions for directed verdict which had originally been pressed at the close of all the evidence. In finding for each of the defendants, the court below concluded that "the plaintiff * * * failed to sustain the burden of proof to establish by competent and material evidence that the defendants knowingly or wilfully violated any applicable provision of the Illinois Structural Work Act" and that "the sole proximate cause of plaintiff's injuries was the conduct of the plaintiff at the time of the occurrence in question * * *." The plaintiff urges us to reverse these findings and the directed verdicts for which the findings provide a foundation.

We are reminded that the standard to be applied to the evidence on a motion for directed verdict is as set forth by our supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. Therein the court, by Justice Underwood, held that verdicts ought to be directed "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) If there is competent and material evidence in the record that the defendants violated the Act in a manner which contributed to plaintiff's injuries, then the order of the trial court cannot, in light of the *Pedrick* rule, be affirmed.

■■ ■ We are also reminded of the unique nature of causes of action under the Structural Work Act. Neither contributory negligence nor assumption of risk constitutes an affirmative defense under the statutory scheme. (*Beebe v. Commonwealth Edison Co.* (1977), 45 Ill. App. 3d 43, 358 N.E.2d 1343.) Concurrent fault on the part of the plaintiff offers no asylum from the liability imposed by the Act. (*Beebe v. Commonwealth Edison Co.*) The reason for this rule is that the object of the Act is to prevent injuries to persons employed in dangerous and extrahazardous occupations, so that negligence on their part in the manner of doing their work might not prove fatal. (*Hosey v. State* (1965), 25 Ill. Ct. Cl. 144.) Nevertheless, it is still necessary that the statutory violation of the defendant be a contributing cause of plaintiff's injury to sustain liability under the Act. (*Beebe v. Commonwealth Edison Co.*) Where the statutory violation does not contribute to proximately cause plaintiff's injury, and where only plaintiff's negligence causes the injury, then no liability arises under the terms of the statute.

■■ It is patent from the record that plaintiff's action in "jumping" his ladder contributed to his fall and injury. Such concurrent fault is not a barrier to plaintiff's recovery. In *Lindsey v. Dean Evans Co.* (1973), 11 Ill. App. 3d 432, 297 N.E.2d 8, the plaintiff, Harold Lindsey, was working on a rolling scaffold rather than a ladder. Like the plaintiff in the instant case, Lindsey attempted to move the scaffold without climbing down to the ground. Lindsey's action caused the planks which formed the scaffold's platform to fall with Lindsey trailing in their wake. While Lindsey's action was negligent and clearly a contributing cause of his injury, the reviewing court determined that Lindsey's fault did not bar recovery. Even though Lindsey's act contributed to his fall, the structural work statute was violated when the planks were not affixed by cleats to the scaffold frame, and that violation was a cause contributing to the mishap. Since a violation of the statute was a contributing cause, recovery was allowed.

From our review of the record at bar, we find material and competent evidence from which the jury could conclude that the commands of the Structural Work Act had been violated in a manner contributing to plaintiff's injury. There was testimony that the railroad ties were cracked and uneven, thus providing an unsafe base for the ladder. There was testimony that available methods for bracing and supporting the ladder were ignored. There was testimony that only a scaffold and not a ladder could meet recommended safety standards for the type of work Dean Smith was doing on October 23. The Act is violated where ladders are not erected in a safe manner and where ladders are not placed and operated so as to give proper and adequate protection to life and limb of persons employed thereon. (Ill. Rev. Stat. 1979, ch. 48, par. 60.) We believe a question for the jury exists as to whether the railroad tie base,

the lack of bracing and support, and the failure to use a scaffold constitute proper and adequate protection in light of all the circumstances. That which would be proper and adequate in one instance may be deficient in another. (*Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134.) It would not be impossible to sustain a verdict which found such violations to be a contributing cause of plaintiff's injuries.

■■ Before civil liability can arise under the Act, the violation thereof must be "wilful." That is, the defendant must know of the violation or, by the exercise of reasonable care, could have discovered the violation. (*Kennerly v. Shell Oil Co.*) In the instant case, the defendants each had agents on the warehouse site that could have been aware of each of the alleged violations complained of by the plaintiff.

■■ Further, defendants must be "in charge" of the work out of which the alleged injury occurred. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.) We find in the record evidence which a jury could properly rely on to conclude that each defendant had agents on the warehouse site with sufficient authority to inspect and oversee the painting work such that each defendant could be found legally "in charge."

The defendants attempt to liken the instant case to others which involve the unsafe use of an otherwise safe appliance. (*Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880, 349 N.E.2d 682; *Vykruta v. Thomas Hoist Co.* (1966), 75 Ill. App. 2d 291, 221 N.E.2d 99; *Lavery v. Ridgeway House Inc.* (1969), 117 Ill. App. 2d 176, 254 N.E.2d 117; *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633.) We do not find these cases determinative of the issue here. Unlike *Getz*, *Vykruta*, *Lavery* and *Mundt*, the record at bar contains evidence of an unsafe appliance, evidence by which a jury could conclude that under the circumstances the ladder as placed and operated did not provide proper and adequate protection to life and limb. With such a material, factual difference, we find no conflict between the cited cases and our decision here.

The record we have reviewed does not so overwhelmingly favor defendants' position so as to permit the directed verdict as ordered below. Indeed, the fact that the jury deadlocked below may well indicate that some members of the jury decided that the evidence in the record supported plaintiff's action. The orders directing verdicts for the defendants are reversed and the cause remanded for further proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.