GEORGE SMYRNIOTIS, Plaintiff-Appellant, v. BROCKOB CONSTRUC-
TION CO. *et al.,* Defendants-Appellees.

First District (1st Division)   No. 85—0246

Opinion filed March 31, 1986.

Kenneth J. Sophie, Jr., of Law Offices of Gerard A. Facchini, of Chicago, for appellant.

D. Kendall Griffith, H. Anne McKee, and Ronald L. Kammer of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Midland-Ross Corporation.

Purcell & Wardrope, Chartered, of Chicago, for appellee Brockob Construction Company.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, George Smyrniotis, appeals an order of the trial court granting summary judgment for defendants on the count of his complaint alleging a cause of action under the Structural Work Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*). The only issue on appeal is whether the Act is applicable to the facts and circumstances of this case. For the reasons set forth below, we affirm.

The occurrence which forms the basis of this litigation took place on October 6, 1981. On that date, plaintiff was employed as a roofer for Dunne Roofing Company (Dunne). Dunne had entered into a subcontract with defendant Brockob Construction Company (Brockob) to repair the roof at a manufacturing facility in Cicero owned by defendant Midland-Ross Corporation (Midland-Ross). Midland-Ross had hired Brockob as the contractor for the project.

On the date in question, plaintiff was working on the upper level of Building 32 at the Midland-Ross plant and had been instructed to install flashing on the outer edge of the roof. No scaffold or support, other than the roof itself, was used as a support to perform the work.

Hanging several feet above the roof were high-voltage power lines. The power lines met the roof of the building by means of a stanchion.

The record shows that just prior to the accident, plaintiff was on his knees installing flashing on the roof. Plaintiff stood up to stretch his back, and the top of his head came in contact with the power lines. He received a severe electrical shock causing burns to his head and hand. He also lost consciousness and fell from the top level of the roof to the next lower level several feet below.

Plaintiff thereafter filed a four-count amended complaint against various parties. Only counts I and IV were directed at Brockob and Midland-Ross. Count I sought recovery under the Structural Work Act, while count IV was based on ordinary negligence. In count I, plaintiff alleged that Brockob and Midland-Ross violated the Act by: (1) directing and permitting him to work atop certain walls or supports which were in close proximity to high-voltage wires; (2) failing to place barricades, fencing material or other protective devices around the wires; (3) failing to isolate the wires in order to protect workers on the roof; (4) failing to warn plaintiff of the danger created by the presence of the wires; and (5) failing to turn off the power while plaintiff was working in the area.

Brockob and Midland-Ross filed a motion for summary judgment as to count I, arguing that plaintiff failed to prove that his injuries were proximately caused by any defect existing in a support device. The trial court granted defendants' motion, ruling as a matter of law that defendants were not liable under the Structural Work Act. In a memorandum opinion, the court reasoned that the plaintiff's injuries had nothing to do with the hazardous nature of the roof as a support device. Plaintiff's motion for reconsideration was denied and this appeal followed.

On appeal, we are to determine the applicability of section 1 of the Structural Work Act, which provides:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill.

Rev. Stat. 1985, ch. 48, par. 60.

■ The Structural Work Act is designed to protect work activities of a particularly hazardous nature and to lessen the extent of the danger. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127, 302 N.E.2d 64.) While it is held that the Act should be given a liberal interpretation to effectuate its beneficient purpose (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573), our supreme court has repeatedly indicated that the Act is not intended to cover any and all construction activities or all injuries at or near a construction site. See *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 481 N.E.2d 709; *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817.

■ In an action brought under the Structural Work Act, a plaintiff must prove the following: (1) he was engaged in or was passing under or by a structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused his injuries; (6) the defendant had charge of the work; and (7) the defendant wilfully violated the Act. *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 439 N.E.2d 12.

■ ■ What is deemed a scaffold for purposes of the Act is not limited to the identity of the object claimed to be a support or scaffold; rather, the proper inquiry is how the object was being utilized at the time of the injury. (*Quinn v. L.B.C., Inc.* (1981), 94 Ill. App. 3d 660, 663, 418 N.E.2d 1011.) It is equally clear, however, that not all accidents involving a scaffold or other type of support device are covered under the Act. (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 371, 325 N.E.2d 607.) When a person is injured by the failure of any support device, the court must determine whether the injury is directly related to the specific, extrahazardous risks against which the Act was designed to protect. *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051.

■ In the present case, plaintiff argues that the roof was defective in its use as a scaffold to support him as he installed flashing. Defendants do not dispute that the roof was being used temporarily by plaintiff as a scaffold. They contend, however, that plaintiff's injuries did not arise out of the roof's failure to function in a manner covered by the Act. The trial court agreed with defendants, holding that the subject occurrence is not the type of extrahazardous risk against which the Act was designed to protect.

We believe that the ruling of the trial court was correct. Two re-

cent cases by this court have involved the issue of whether a cause of action exists under the Structural Work Act for a plaintiff whose injuries are caused by contact with high-voltage wires while using a support device covered by the Act. Both cases hold that no such cause of action exists because the injuries were caused by the contact with the electrical wires and not by any failure of the support device. *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921; *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 439 N.E.2d 12.

In *Kochan,* the plaintiff was standing on a ladder for his support when he came into contact with overhead high-voltage wires. The ladder itself was not defective. In *Kochan,* as in the present case, the plaintiff alleged that the placement of the support in close proximity to overhead high-voltage wires constituted a violation of the Structural Work Act. This court affirmed the trial court's holding that the ladder, which was being used as a scaffold, was not the proximate cause of the plaintiff's injury, reasoning as follows:

> "[I]t is still necessary that the statutory violation of the defendant be a contributing cause of plaintiff's injury to sustain liability under the Act. Where the statutory violation does not contribute to proximately cause plaintiff's injury, and where only plaintiff's negligence causes the injury, then no liability arises under the terms of the statute." (*Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 847-48, 463 N.E.2d 921.)

This court concluded in *Kochan* that summary judgment was properly granted for the defendant because "no defect in the construction or use of the ladder caused his injuries." *Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 848, 463 N.E.2d 921.

Similarly, in *St. John,* the plaintiff received burn injuries when he came in contact with an energized power line while working in a ditch. The trial court's granting of summary judgment was affirmed by this court. We reasoned that even assuming the ditch was a scaffold within the meaning of the Act, it was not the proximate cause of the plaintiff's injury. We stated:

> "Clearly, plaintiff's injury was not proximately caused by anything related to the failure of the alleged scaffold to function in a manner falling within the requirements of the Act. It is only when an injury has some connection with the hazardous nature of one of the devices named *** that a cause of action may be maintained ***." *St. John v. City of Naperville* (1982), 108 Ill. App. 3d 519, 524, 439 N.E.2d 12.

In *St. John,* we relied on *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607. There, the plaintiff was inspecting a building under construction when he tripped, fell against a ladder, and then fell through an open unbarricaded baffle chamber to the basement below. The supreme court held that while the ladder was a support device expressly listed in the Act, it was not the cause of plaintiff's injury. The court stated:

"The obvious hazards of a scaffold or ladder are that workmen or materials may fall off such devices or that the devices themselves may fall. *** The ladder may well have been placed or left in the baffle area in a negligent manner and may have contributed to plaintiff's injury, but the testimony shows no violation of the Structural Work Act. *It is only when an injury has some connection with the hazardous nature of one of the devices named in section 1 of the Act that a cause of action may be maintained under that section of the Act.*" (Emphasis added.) (*Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 371, 325 N.E.2d 607.

In the present case, the hazards of high-voltage wire, similar to the hazards of falling against a ladder, are distinct from the hazards that fall within the terms of the Structural Work Act.

Plaintiff asserts that because the power lines were permanently attached to the roof by means of a stanchion, the roof was defective as a support device. In support of this assertion, plaintiff cites *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219, and *Kenney v. T. L. Arzt Foundry Co.* (1941), 308 Ill. App. 251, 31 N.E.2d 620. In *Navlyt,* the plaintiff was injured while installing a sewer system on the defendant's premises. The sole issue on appeal was whether the plaintiff was working "on or about" a "structure" within the ambit of the Structural Work Act. Here, no dispute exists as to whether plaintiff was working "on or about" a structure under the Act. Hence, we find *Navlyt* inapplicable to this case.

Plaintiff's reliance on *Kenney* is also misplaced. *Kenney* involved the issue of whether, under landlord-tenant law, a commercial lessee may, upon termination of the lease, dismantle certain machinery and equipment, including wiring, that had been used in running the lessee's foundry business. *Kenney* does not decide or even consider the issue of what hazards were intended to be covered under the Structural Work Act.

■ Plaintiff additionally urges that the stanchion itself was an unsafe support device within the terms of the Act. In particular, plaintiff alleges that the stanchion failed to safely support the power lines

and was defective because there was a failure to comply with General Order 160 of the Illinois Commerce Commission Regulations. This regulation provides that there must be a minimum clearance of eight feet between any building and an electrical supply conductor carrying in excess of 8,700 volts. Plaintiff, in arguing that the stanchion was defective under the Act, cites *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 1051. In *Urman,* the issue before the reviewing court was whether the failure to provide cribbing to support construction materials could provide the basis for a cause of action under the Structural Work Act. The plaintiff in that case had been injured when a 600-pound steel truss fell upon him. The truss was to be installed to support the roof decking. The *Urman* court held that a failure to provide supports for construction materials may, in certain circumstances, violate the Act.

In the present case, plaintiff's injuries were caused by contact with overhead power lines. The stanchion neither operated as a support for plaintiff nor functioned to prevent the falling of construction materials. As such, we find that *Urman* fails to support the position now urged by plaintiff.

■■ Summary judgment will only be entered in favor of the moving party where the pleadings, depositions, admissions and affidavits demonstrate that no genuine issue of fact exists which warrants trying the case. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) In the context of the Structural Work Act, it is held that summary judgment may be proper where, as here, the material facts are not in dispute and the controversy is over the proper construction of the Act and whether the facts state a cause of action. (*Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 463 N.E.2d 921.) We find that in the instant case, the trial court properly determined that, as a matter of law, the facts do not sustain a cause of action under the Structural Work Act. As this court stated in *Rayfield v. Homart Development Co.* (1981), 100 Ill. App. 3d 620, 622-23, 427 N.E.2d 193:

"[T]he [Structural Work] Act should not be interpreted so that it is extended unnecessarily to cover neoteric theories of liability where the existing workmen's compensation and tort remedies protect and give reasonable and satisfactory relief to construction workers."

Plaintiff in the present case has urged the court to extend the Act to encompass a hazard extremely remote from those dangers contemplated by the legislature when it enacted the statute. Such an expansion of the Act is both unwarranted and unnecessary here, where the hazard is unrelated to the dangers associated with scaffolds or sup-

ports (see *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 325 N.E.2d 607) and the plaintiff is free to pursue other theories of recovery. Accordingly, the trial court correctly granted summary judgment in favor of defendants.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.